## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENNIS A. BRIGGS,          )
                                )
            Plaintiff,       )
                                )
            v.              )      02: 07-cv-0118
                                )
PENNSYLVANIA DEPARTMENT OF   )
TRANSPORTATION, JEFFREY KARR,   )
Individually and official capacity,    )
STEVEN E. KOSCELNAK, individually  )
and his official capacity, and RALPH W. )
GILLIUM, individually and his official   )
capacity,                           )
                                )
           Defendants.   )

## MEMORANDUM OPINION AND ORDER OF COURT

August 7, 2009

      Presently before the Court for disposition is the MOTION FOR SUMMARY

JUDGMENT, with brief in support, filed by Defendants, Pennsylvania Department of

Transportation ("PennDOT"), Jeffrey Karr, Steven E. Koscelnak, and Ralph W. Gillium

(collectively "Defendants") (Document Nos. 27 and 29), the brief in opposition filed by

Plaintiff, Dennis A. Briggs (Document No. 34), and the response brief filed by Defendants

(Document 40).

      The issues have been fully briefed and the matter is ripe for disposition.  The factual

record has also been thoroughly developed via DEFENDANTS' APPENDIX IN SUPPORT OF

THEIR MOTION FOR SUMMARY JUDGMENT, the STATEMENT OF MATERIAL

FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(Document No. 28), the APPENDIX TO PLAINTIFF'S BRIEF IN SUPPORT OF

PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT MOTION, the PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS filed by Plaintiff (Document No. 33), and the DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS (Document No. 41).

After careful consideration of Defendants' motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Dennis A. Briggs, on his claims of racial discrimination. Therefore, for the reasons that follow, Defendants' Motion for Summary Judgment will be granted in its entirety.

## PROCEDURAL BACKGROUND

Plaintiff, an African-American male, filed this civil rights action pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq*., Title 42, United States Code, section 1983, and the Pennsylvania Humans Relation Act ("PHRA"), 43 Pa.C.S.A. § 955(a) et seq.  Specifically, Plaintiff contends that PennDOT illegally terminated his employment on the basis of his race and that Defendants Jeffrey Karr, Steven E. Koscelnak, and Ralph W. Gillium (collectively referred to as the "Individual Defendants") participated in the alleged unlawful employment discrimination by aiding and abetting PennDOT in its discriminatory firing of him.

Defendants have filed the instant Motion for Summary Judgment in which they contend that PennDOT is entitled to judgment as a matter of law because Plaintiff is unable to establish a *prima facie* case on his Title VII claim or, in the alternative, that Plaintiff has not adduced any evidence from which a reasonable fact-finder could either (i) disbelieve

PennDOT's articulated non-discriminatory reason for the termination of Plaintiff's employment or (ii) believe that an invidious discriminatory reason was more likely than not a determinative cause for its decision.  Defendants also contend that the Individual Defendants are entitled to summary judgment because Plaintiff's § 1983 and PHRA claims fail as a matter of law because Plaintiff is not able to establish the underlying discrimination claim.

## BACKGROUND

As the law requires, all disputed facts and inferences are to be viewed in the light most favorable to Plaintiff.

Plaintiff began his employment with PennDOT in October 1979.  His employment continued until June 1, 2005, when he was terminated from his position as a  District 11 Transportation Equipment Operator 2 following a WTAE television station expose entitled "Men at Play" reported by investigative reporter Jim Parsons ("Parsons").  The WTAE expose aired on May 4, 2005, and two follow-up reports aired on WTAE on May 5, 2005.

PennDOT first became aware that Parsons was investigating the activities of several of its employees on April 13, 2005, when it received a Right-to-Know request asking for the daily and weekly time and work records of twelve (12) PennDOT employees, including a request for Plaintiff's time and work records.

Subsequently, on May 3, 2005,  Richard Kirkpatrick, PennDOT Press Secretary, Karl Ishman, and Joe Szczur, PennDOT District Executives for Engineering for Districts 12 and 13, respectively,  met with reporter Parsons to discuss the upcoming WTAE expose.  During the meeting, Parsons informed the PennDOT representatives that  he had observed Plaintiff on

the afternoon of January 12, 2005,  arriving at the PennDOT Monroeville Stockpile at 4:20 p.m. in his personal vehicle, and leaving the stockpile at 4:35 p.m. in a PennDOT truck.  Parsons stated that he then observed Plaintiff drive the PennDOT truck to the Miracle Mile Shopping Center in Monroeville, where he parked and exited the truck.  Additionally, Parsons stated that he observed the PennDOT truck that Plaintiff had driven to the shopping center remain in the parking lot  unattended for a period of two and one-half hours, during which time Plaintiff did not return to it.  Karl Ishman later verified that on January 12, 2005, the day of Parsons' observations,  Plaintiff had been assigned to conducting wind and rain patrol for his entire shift.

Plaintiff denies that he engaged in the misconduct observed by Parsons on January 12, 2005, and contends that the PennDOT truck Plaintiff was assigned to on January 12, 2005, was different than the truck observed by Parsons.  Thus, according to Plaintiff, he could not have engaged in the misconduct observed by Parsons.

However, the Court notes that Plaintiff's position as to Parsons' observations on January 12, 2005, is not consistent. Specifically, Plaintiff admits in his Responsive Statement of Material Facts that Parsons observed Plaintiff engaging in this behavior.[1]

---

[1]    Defendants' Statement of Material Facts:
"8.  Specifically, Mr. Parsons stated that on January 12, 2005, he observed Mr. Briggs arriving at the Monroeville Stockpile at 4:20 p.m. in his personal vehicle, and leaving the stockpile at 4:35 p.m. in a PennDOT truck."

"9.  Mr. Parsons also stated that he observed Mr. Briggs drive the PennDOT truck to the Miracle Mile Shopping center, park the PennDOT vehicle behind the DSW Shoe Store, and exit and leave the vehicle."

"10.  Mr. Parsons further stated that he observed the PennDOT Vehicle that Mr. Briggs had driven to the shopping center for a period of two and one-half (2 ½) hours and Mr. Briggs never returned to the vehicle."

(continued...)

These admissions are particularly notable because while Plaintiff responds to other statements in his Responsive Statement of Material Facts by admitting that  they were made but denying the truth of the content, with regard to Parsons' observations, Plaintiff simply admits them without any qualification.

On May 4, 2005, the day after Parsons met with the three PennDOT representatives, WTAE aired the "Men at Play" expose.  During the segment, which was filmed on March 31, 2005, Parsons provided audio commentary stating that he observed Plaintiff arriving nineteen (19) minutes late to work that morning.  Additionally, Plaintiff is shown on the video entering the PennDOT Monroeville stockyard in his personal vehicle, leaving the Monroeville stockyard in a PennDOT vehicle, and then driving to Lowes Home Improvement Store in Monroeville, where he shopped for forty (40) minutes. The video then shows Plaintiff exiting the store with a folding table, folding chairs, some lumber, and several tubes of caulking and loading the items in the PennDOT vehicle, whereafter he drives to a restaurant and stops to eat a meal.  After dining, Plaintiff re-enters the PennDOT vehicle, drives past the Monroeville stockyard, and eventually parks the vehicle in front of his house in Wilkinsburg.  Thereafter, Plaintiff is shown carrying the items he purchased from Lowes Home Improvement Store into  his house.  The video reflects that Plaintiff was absent from work for approximately two hours.

---

[1](...continued)
Plaintiff's Responsive Statement of Facts:

"8.  Admitted"

"9.  Admitted"

"10.  Admitted"

Also shown in the expose were seven (7) other PennDOT employees, six (6) of whom were Transportation Equipment Operators ("TEOs"), and one PennDOT supervisor. The video shows several of the TEOs performing mechanical services on their personal automobiles during work hours and/or using PennDOT washers to clean their personal vehicles. All six TEOs are shown departing from work two (2) hours early after being given permission by their supervisor, Richard Queen, who is also was shown leaving two (2) hours early. With the exception of Plaintiff, all the PennDOT employees shown in the WTAE video are Caucasian.

A followup to the WTAE expose aired the following day, on May 5, 2005. In this segment, Parsons explained his observations of Plaintiff on January 12, 2005, which he had previously relayed to PennDOT representatives during their May 3, 2005, meeting.

Immediately following the May 4, 2005, airing of the WTAE expose, PennDOT scheduled a Pre-Disciplinary Conference ("PDC") for Plaintiff on the next day, May 5, 2005. In attendance at the PDC were Plaintiff, Defendant Jeff Karr, Acting ADE Maintenance; Anthony Perrotta, Allegheny County Manager; Robert Crawford, Assistant County Maintenance Manager; Defendant Ralph Gillium, District Human Resources Manager; Defendant Steve Koscelnak, District Labor Relations; Dave Hendersen, AFSCME D.C. 84; Rick Wolfe, Local 2107 President; and Don King, Local 2107.

The PDC began with Defendant Karr explaining that three alleged infractions against Plaintiff would be discussed and Plaintiff would be given an opportunity to respond to each. The first infraction discussed was whether Plaintiff was absent without leave on May 4, 2005. Plaintiff responded that his foreman had given him permission to leave early that day.

6

The second infraction discussed involved Plaintiff's alleged actions on March 31, 2005, which were depicted on the WTAE expose.  After viewing the WTAE video, Plaintiff stated that although he had impulsively purchased the lumber and caulking for his personal use, he had purchased the table and chairs for the Monroeville Stockpile.  Plaintiff stated that he had collected money for the purchase of the table and chairs from fellow employees Frank Friday, Dave Marshall, Don King, Tony Glaze, and Wayne Phillips.  Plaintiff also stated that he received permission from a supervisor, Mark Ivanco ("Ivanco"), sometime in late March 2005 to make these purchases.  Plaintiff admitted that he had not "formally discussed" with Ivanco if the items could be purchased during work hours, but Plaintiff stated that Ivanco had implied that Plaintiff could use a PennDOT vehicle when he made the purchases.   Additionally, Plaintiff stated that he took the items to his house in Wilkinsburg for safekeeping because Allegheny County was in the process of switching to daylight shift.  He contended that he brought the furniture to the Monroeville Stockpile the following week, during the first week of April.

The last infraction discussed at the PDC was Plaintiff's alleged misconduct on January 12, 2005, as reportedly observed by Parsons.  In response, Plaintiff stated that he did not recall his activities on that date.

After a brief caucus, Defendant Karr advised Plaintiff that his employment was immediately suspended pending the outcome of a PennDOT investigation into each of the allegations discussed at the PDC.

The following day, Plaintiff received from PennDOT a written confirmation of his suspension pending further investigation.  The infractions being investigated were identified as

7

(i) absence without leave, (ii) performing unauthorized personal work during working time, (iii) leaving PennDOT premises during working hours without the permission of a supervisor, and (iv) unauthorized use of / misappropriation of PennDOT equipment.

Plaintiff contends that PennDOT did not conduct any further investigation after the PDC.  However, Plaintiff does not dispute that, subsequent to his PDC, PennDOT obtained statements from various employees regarding Plaintiff's alleged misconduct.  For example, six (6) PennDOT employees submitted written statements which reflected that they had never seen the table and chairs in the Monroeville stockpile office.

Additionally, on May 9, 2005, the statement of Ivanco was taken.  Ivanco stated that Plaintiff had not contacted him about buying anything for the stockpile office in February or March 2005, but rather that Plaintiff first mentioned possibly buying items for the stockpile office on May 2, 3, or 4, 2005, again a stark contradiction to the statement of Plaintiff. According to Ivanco, Plaintiff simply inquired as to whether the men were permitted to buy items for the stockpile office, and Ivanco replied that such purchases were permitted.   Also, Ivanco stated that the first time he saw the table and chairs at the stockpile office was on May 5, 2005; although Plaintiff asserts that he brought the items to the stockpile office during the first week of April 2005.

Louis Basciotta ("Basciotta"), a PennDOT employee and Allegheny County Maintenance Manager, also provided a statement subsequent to Plaintiff's PDC.  Basciotta stated that purchasing furniture for the Monroeville stockpile office is always done through Department procedures, and that in the past when any type of furniture "appeared" which had not been purchased through Department procedures, he immediately had it thrown away.     .

8

At the conclusion of the PennDOT  investigation, the members of the District 11-0 management team, including Defendants Karr, Koscelnak, and Gillium, came to a unanimous decision that Plaintiff's employment should be terminated.  Thereafter, the District Executive, Carl Ishman, on behalf of the District 11-0 management team, recommended to central office labor relations, specifically Dale Wetzel, that Plaintiff's employment be terminated.

On May 31, 2005, Plaintiff received written notification that the investigation into his alleged misconduct had concluded and that his employment was being terminated for the following reasons:

> (1) performing unauthorized personal work during working time on March 31, 2005;
>
> (2) leaving Department premises during working hours without the permission of a supervisor on January 12, 2005, and on March 31, 2005; and
>
> (3) unauthorized use of Department equipment on January 12, 2005 and March 31, 2005.

Plaintiff was also informed that PennDOT's investigation had revealed that, contrary to Plaintiff's position, he had not received his foreman's approval to purchase the table and chairs for the stockpile office.  The letter further stated that Plaintiff had been "disciplined several times in the past for related infractions."

The summary judgment record reflects that Plaintiff's past infractions date back to 1985.  Over the years, Plaintiff was disciplined numerous times, including having received nine (9) suspensions and several written reprimands for various acts of misconduct.  On January 28, 1992,  Plaintiff was actually terminated from PennDOT because of various acts of misconduct which he committed on December 31, 1991.  As a result of his 1992 termination, Plaintiff filed

a complaint with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that he was unlawfully terminated because of his race.[2]  Plaintiff also filed a grievance with PennDOT, which resulted in the reinstatement of his employment, but he was given a fifteen day suspension and issued a final warning.

Separate PDCs were also held for the other seven (7) employees shown on the WTAE expose.  The six TEOs from District 12 largely received one or three-day suspensions. Joseph Sinko, James Guzzell, and Chris Glass each received one-day suspensions without pay for leaving work on March 18, 2005, two hours early without submitting a leave request slip. John Patrick received a three-day suspension without pay for using Department equipment on March 18, 2005, to wash his personal vehicle on work time, and for leaving work two hours early without submitting a leave request slip.  Greg Ferrence and Thomas Risbin both resigned from employment before any disciplinary actions could be taken.

Richard Queen ("Queen"), the supervisor who was shown in the WTAE broadcast, was suspended without pay pending further investigation by PennDOT.  Queen was then permitted to resign from his position in lieu of termination.[3]  However, due to Queen's failure to meet the requirements of resignation, namely failing to submit his letter of resignation, his departure from PennDOT was ultimately deemed a discharge or termination.

---

[2]  The summary judgment record only contains the EEOC complaint; it does not reflect whether Plaintiff actually pursued the complaint.

[3]  Defendants contend that during the grievance process, Plaintiff was also offered the opportunity to resign in lieu of termination.  See deposition of Dale Wetzel. However, Plaintiff denies that he was ever offered this option.

None of the Individual Defendants were involved in disciplining the other six TEOs or Queen.

The summary judgment record reflects that no prior disciplinary actions had ever been taken by PennDOT against these seven other employees.  Only Glass and Patrick had received a prior misconduct, which involved counseling on the proper usage of sick leave.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

With respect to summary judgment in discrimination cases, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the

11

light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of

material fact as to whether the employer intentionally discriminated against the plaintiff."

*Hankins v. Temple Univ.,* 829 F.2d 437, 440 (3d Cir.1987).  The task of the Court is not to

second-guess employment decisions, but is instead to determine whether the employment

decisions were motivated by an illegal discriminatory or retaliatory purpose.  *See Ezold v. Wolf,*

*Block, Schorr & Solis-Cohen,* 983 F.2d 509, 525 (3d Cir.1992), *cert. denied,* 510 U.S. 826

(1993).

      The Court need not accept mere conclusory allegations, whether they are made in the

complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).  In

deciding a motion for summary judgment, "the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  *Liberty Lobby,* 477 U.S. at 249.


## DISCUSSION

**A.**       **Claims Brought Under Title VII against PennDOT**

      Title VII makes it unlawful for an employer "to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment because of

such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 20002-2(a)(1).

In a Title VII lawsuit, the familiar *McDonnell Douglas* [4] formulation regarding the appropriate

burdens of proof and allocation of production of evidence govern and guide the analysis of the

---

[4]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

evidence presented on a motion for summary judgment.  Accordingly, the plaintiff bears the initial burden of presenting a prima facie case.

To establish a *prima face* case of discrimination under Title VII, the employee must demonstrate that (1) the employee is a member of a protected class; (ii) the employee was qualified for the position in question; (iii) the employee suffered an adverse employment decision; and (iv) circumstances exist that give rise to an inference of unlawful discrimination, such as might occur when similarly situated persons not within the protected class were treated more favorably.  *McDonnell Douglas,* 411 U.S. at 802;  *see Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

Should the plaintiff make this showing, a presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its decision.  *Fuentes*, 32 F.3d at 763; *Weldon v. Kraft, Inc*., 896 F.2d 793, 797 (3d Cir.1990).  The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory purpose.  *Fuentes*, 32 F.3d at 763.

If the defendant is able to clear this relatively low hurdle, the presumption evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing that a discriminatory purpose was a determinative or motivating factor in the decision.  *Id*. at 764; *Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 179-80 (3d Cir. 1985), *cert. denied*, 75 U.S. 1035 (1986).  The plaintiff must point to specific evidence of record from which a reasonable factfinder either (i) could disbelieve the legitimate, non-discriminatory reason(s) set forth by the employer; or (ii) could believe that an invidious discriminatory reason was more

likely than not a determinative cause of the employment action.  *Id.*  The plaintiff can either prove this directly, by showing that discriminatory considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638; *Weldon*, 896 F.2d at 797 (3d Cir. 1993).  Thus, a court's ultimate task in a race discrimination case is to determine whether the plaintiff has carried his burden of showing, by a preponderance of the evidence, that the employer intentionally discriminated against him.  *Josey,* 996 F.2d at 637; *see Bellissimo,* 764 F.2d at 179 (stating that "a plaintiff must show that his status as a minority class was the but for reason for the treatment accorded").

In this case, Plaintiff claims that Defendants discriminated against him on the basis of race by having terminated his employment.  Defendants respond that Plaintiff cannot prove his prima facie case, and additionally they contend that their decision to terminate Plaintiff's employment was based on legitimate, nondiscriminatory reasons.

### 1.    *Prima Facie Case*

Defendants argue that Plaintiff has failed to establish his *prima facie* case because he has failed to produce record evidence to support the conclusion that similarly situated individuals not within his protected class were treated more favorably than he was.  Plaintiff contends that all of the other employees shown in the WTAE expose, all of whom were Caucasian, were treated more favorably because they were not terminated, but rather received suspensions.

It is undisputed that Plaintiff is a member of a protected class, that he was qualified for his former position, and that he was subjected to an adverse employment action when he

was terminated.  However, the Court finds and rules that Plaintiff has failed to establish the fourth and essential element of his *prima facie* case by failing to demonstrate that circumstances exist that give rise to an inference of unlawful discrimination.

To be deemed similarly situated, courts have found that employees must be involved in or accused of the same offense and be disciplined in different ways.  *Wheeler v. Aventis Pharmaceuticals,* 360 F.3d 853, 858 (8th Cir. 2004) (citation omitted).  Specifically, for the purpose of establishing disparate treatment, the individuals with whom Plaintiff seeks to be compared must have "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Opsatnik v. Norfolk Southern Corp.*, 2009 WL 1931170 *2 (3d Cir. July 7, 2009) (*quoting Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *see also Anderson v. Haverford College*, 868 F. Supp. 741, 745 (E.D. Pa. 1994).  Moreover, at the prima facie stage of the analysis, "evidence of differential treatment of 'a single member of the non-protected class is insufficient to give rise to an inference of discrimination.' " *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 359 (3d Cir. 1999*) (quoting Simpson v. Kay Jewelers,* 142 F.3d 639, 646 (3d Cir.1998)).

Although all of the Caucasian employees shown in the WTAE expose engaged in different conduct than Plaintiff, the infractions charged against these employees were either identical or substantially similar to those charged against Plaintiff.  Thus, for the purpose of determining whether the Caucasian employees were similarly situated, they can be said to have engaged in similar conduct to Plaintiff.

15

However, while the conduct engaged in may be similar to Plaintiff, the disciplinary history of these seven employees starkly contrasts with that of Plaintiff.  The Third Circuit Court of Appeals has established that an employee's disciplinary history, especially one that is extensive, can differentiate a plaintiff from his or her alleged similarly situated comparators. *See Brokenbaugh v. Exel Logistics North America Inc.*, 174 Fed. Appx. 39, 46 (3d Cir. 2006) (finding "no evidence of an employee at [Defendant] Exel that had amassed a record so replete with workplace infractions that he or she might be considered similarly situated to [Plaintiff] Brokenbaugh.")  Here, Plaintiff had an extensive disciplinary record which included nine (9) previous suspensions, whereas none of the other seven employees had any prior disciplinary action taken against them.  The only evidence of prior misconduct of these seven employees is that two of the seven were counseled on the proper use of sick leave.  Notably, PennDOT employee Dale Wetzel testified that in his almost 24 years of service with the Commonwealth, he had only seen one work record  worse than Plaintiff's.  Therefore, Plaintiff's extensive disciplinary history, including nine (9) suspensions, several written reprimands, and two (2) final warnings, is a differentiating circumstance which prevents any of the seven Caucasian employees from being deemed "similarly situated" to Plaintiff.

Thus, the Court finds and rules that Plaintiff has failed to present any evidence that similarly situated individuals not within his protected class were treated more favorably than Plaintiff.  Mere speculation is not sufficient to establish a *prima facie* case of race discrimination.  *See, e.g., Bailey v. Principi*, 2003 U.S. Dist. LEXIS 15538 at *19 (E.D. Pa. Aug. 20, 2003) ("[T]he plaintiff . . . must demonstrate the existence of sufficient facts to allow him to prove by a preponderance of the evidence that a prima facie case of discrimination exists

16

that goes beyond the plaintiff's mere speculation.")  *Bullock  v. Children's Hosp. of Philadelphia*, 71 F. Supp. 2d 482, 490 (E.D. Pa. 1999) ("[T]he Plaintiff must prove by a preponderance of the evidence that a *prima facie* case of discrimination exists.  It does not suffice to suggest the mere possibility of discrimination.")   Consequently, the Court finds and rules that Plaintiff has not proven his *prima facie* case.  Accordingly, summary judgment will be granted to PennDOT on Plaintiff's Title VII claim.

### 2.      *Establishing a Pretext of Discrimination*

However, assuming *arguendo* that Plaintiff had established a *prima facie* case of discrimination, the Court would nevertheless grant summary judgment because the Court finds and rules that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendants' articulated nondiscriminatory reasons or (2) otherwise believe that an invidious discriminatory reason was more than not a motivating or determinative cause for Defendants' decision to terminate Plaintiff's employment.  *See Fuentes*, 32 F.3d at 764.

As discussed *supra*, the summary judgment record reflects that the termination letter Plaintiff received articulated legitimate, nondiscriminatory reasons for PennDOT's decision, which included Plaintiff's conduct on January 12, 2005, and March 31, 2005, and additionally referenced Plaintiff's prior history of misconduct.  As a result, the Court finds that PennDOT has met its burden of providing legitimate, nondiscriminatory reasons for its termination of Plaintiff's employment.

Conversely, based on the undisputed summary judgment record evidence, the Court finds that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could

find that PennDOT's real reason for terminating Plaintiff's employment was discriminatory animus. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-147 (2000). In order to meet this final burden, Plaintiff cannot merely show that the employer's decision was wrong or mistaken, but must provide evidence from which a reasonable factfinder could infer that each of the reasons proffered by the employer "was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 765. Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.*

The evidence proffered by Plaintiff to establish PennDOT's alleged discriminatory animus toward him is Plaintiff's own EEOC complaint filed in 1992 and an alleged comment about Plaintiff made in the early 1990's as recalled by a former co-worker. Additionally, Plaintiff alleges that his prior disciplinary history, including the 1992 final warning, was merely a *post hoc* fabrication for a reason to terminate him.

First, with regard to the EEOC complaint, as previously mentioned, only the complaint was provided to the Court as record evidence. Thus the Court can only assume that this complaint was not pursued further after Plaintiff was reinstated as a PennDOT employee in 1992. Notably, Plaintiff's return to work was conditioned upon his receipt of a fifteen day suspension and issuance of a final warning. Additionally, Plaintiff continued his employment with PennDOT for thirteen (13) years before being terminated in 2005 based on the misconduct revealed during the WTAE expose. Plaintiff has provided no other allegations or evidence of racial discrimination which he experienced during those intervening thirteen (13)

18

years.  Consequently, Plaintiff's single, unsubstantiated EEOC complaint from thirteen (13)

years ago does not establish that a discriminatory animus resulted in Plaintiff's 2005

termination from PennDOT.

      Similarly, the comment recalled by Plaintiff's former co-worker, Chuck Rullo

("Rullo"), also fails to establish a pretext of discrimination by PennDOT.  Rullo provided a

written statement dated August 27, 2008, in which he asserts that "[s]ometime in the early 90's,

I can recall Assistants in charge of [Plaintiff] saying and I quote 'I'm going to get rid of that boy

someway.'"  Our Court of Appeals has held that "[s]tray remarks by non-decisionmakers or by

decisionmakers unrelated to the decision process are rarely given great weight, particularly if

they were made temporally remote from the date of decision."  *Fletcher v. Lucent Tech. Inc.*,

207 Fed. Appx. 135, 138 (3d Cir. 2006) (quoting *Ezold v. Wolf, Block, Schorr & Solis-

Cohen,* 983 F.2d 509, 545 (3d Cir. 1992)).  Thus, Rullo's recollection of an alleged comment

made approximately fourteen (14) to eighteen (18) years ago by unnamed individuals who may

or may not still be employed by PennDOT fails to establish that a discriminatory animus was

the reason for Plaintiff's 2005 termination.

      Finally, although Plaintiff asserts that his disciplinary history, including his 1992

final warning, was a post hoc fabrication of a reason for Plaintiff's termination, such an

assertion is simply not supported by the record.  Instead, the record reflects that Plaintiff's

termination letter, which listed PennDOT's reasons for Plaintiff's discharge, referenced his

"past related infractions."  Additionally, Defendants Koscelnak and Gillium both testified that

Plaintiff's disciplinary history was a factor taken into account when determining whether to

terminate his employment.  Furthermore, although Plaintiff denies that the 1992 final warning

was present in his personnel file prior to his termination, he does not deny the presence of his

remaining disciplinary history in the file, including the 1993 re-affirmation of the 1992 final

warning.  Thus, based on the totality of the undisputed record evidence, the Court finds and rules that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendants' articulated nondiscriminatory reasons or (ii) otherwise believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause for Defendants' decision to terminate Plaintiff's employment.

B.      **Claims Brought Under  § 1983 and PHRA against The Individual Defendants**

Similarly, because Plaintiff has failed to establish that he was subjected to discrimination by PennDOT, the Court finds and rules that Plaintiff's 42 U.S.C. § 1983 and PHRA claims against the Individual Defendants also fail.  Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination."  *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990).  "Claims that supervisors directly or indirectly participated in alleged discriminatory behavior must be supported by evidence of direct discrimination by the supervisor or evidence that the supervisor possessed actual knowledge of and/or acquiesced in the discriminatory behavior of others."  *Evans v. Port Authority Trans-Hudson Corp.*, 2006 WL 408391 *6 (3d Cir. Feb. 23, 2006) (*citing Andrews,* 895 F.2d at 1478).

Likewise, the PHRA provides that it is unlawful for any person or employer "to aid, abet, incite, compel, or coerce" unlawful employment discrimination.  43 P.S. § 955(e).

20

Individual "aiding and abetting liability" under the PHRA is limited to supervisors only.  *See Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996).

In this case, because Plaintiff has not shown that PennDOT discriminated against him, the Individual Defendants cannot be held liable under § 1983, *see Evans*, 2006 WL 408391 *6, or for aiding and abetting discrimination under the PHRA.  *See Stepp v. Fairpoint Communications Inc.*, 2007 WL 4248559 *9 (W.D. Pa Nov. 30, 2007).  Thus, the Court finds and rules that Plaintiff has failed to produce the evidence of discrimination necessary to prevail on his §1983 and PHRA claims.

## CONCLUSION

For the reasons hereinabove set forth, the Court finds that Plaintiff has failed to prove his *prima face* case of race discrimination.   In the alternative, the Court finds and rules that Plaintiff has failed to adduce any evidence from which a reasonable factfinder could (i) disbelieve Defendants' articulated nondiscriminatory reasons or (ii) otherwise believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause for Defendants' decision to terminate Plaintiff's employment.  Additionally, there is no evidence of purposeful discrimination by the Individual Defendants, nor is there evidence of the existence of discrimination to aid and abet.  Therefore, the Motion for Summary Judgment filed by Defendants will be granted in its entirety.

An appropriate Order follows.

McVerry, J.

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS A. BRIGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 07-cv-0118 |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| TRANSPORTATION, JEFFREY KARR, | ) | |
| Individually and official capacity, | ) | |
| STEVEN E. KOSCELNAK, individually | ) | |
| and his official capacity, and RALPH W. | ) | |
| GILLIUM, individually and his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER OF COURT

AND NOW, this 7th day of August, 2009, in accordance with the foregoing

Memorandum Opinion, it is hereby ORDERED, ADJUDGED, AND DECREED that the

Motion for Summary Judgment filed by Defendants Pennsylvania Department of Transportation,

Jeffery Karr, Steven E. Koscelnak, and Ralph W. Gillium (Document No. 27) is GRANTED and

judgment is hereby entered in favor of Defendants, Pennsylvania Department of Transportation,

Jeffrey Karr, Steven E. Koscelnak, and Ralph W. Gillium, and against Plaintiff, Dennis A.

Briggs.

The Clerk of Court shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:      Joseph P. Nigro, Esquire
Nigro & Associates
Email: contact@nigroassociates.com

Tracey A. Wilson, Esquire
Office of the Attorney General
Email: twilson@attorneygeneral.gov